### McAULEY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department.   January 8, 1906.)

1. MASTER AND SERVANT—DUTIES OF MASTER—SAFE PLACE TO WORK.

A railroad's duty to furnish a safe track for its employés to run over, only demands that it shall not require them to work upon a track that it knows or in the exercise of a reasonable inspection should know to be unsafe, and it is not bound to repair an unsafe track if it ceases to use the same.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 218–223.]

2. SAME—WHO ARE FELLOW SERVANTS.

Where a wreck on one track of a railroad did not in any way obstruct a parallel track, a flagman on a wrecking train, whose duty it was to warn trains approaching on the parallel track was not performing a duty of the railroad, which the latter could not delegate, but was a mere fellow servant with the trainmen on such trains, and the railroad was not responsible for his negligence in failing to warn a train approaching at a time when the parallel track was temporarily obstructed by a crane projecting out from the wrecking train.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 497, 500.]

Appeal from Trial Term.

Action by Margaret E. McAuley, as administratrix of Hugh McAuley, deceased, against the New York Central & Hudson River Railroad Company.   From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.   Reversed.

The plaintiff's intestate was a passenger engineer in the employ of the defendant.   On the morning of February 27, 1901, he received orders to take a light engine and train crew, and run west on track 2 on defendant's road from Albany to Rotterdam Junction.   Such run was to be made as a third section of train 37.   The first section of such train, consisting of a regular passenger train, left Albany at the usual time, and passed through Schenectady at 3:12 that morning.   A wreck had occurred on track 4 at a curve in the road about 1¾ miles west of Schenectady, and the wrecking train was ordered out and proceeded westward from Albany to Schenectady on tract 2, and thence on track 3 to the place of the wreck, following such first section and passing Schenectady at 3:35.   At the place of the wreck there were four tracks, numbered from the south, viz., (1) east-bound passenger, (2) west-bound passenger, (3) west-bound freight, and (4) east-bound freight.   Such wreck did not obstruct track 2, but in the work of removing the wreckage from track 4, the crane of the steam derrick on the wrecking train projected over track 2, and caused a temporary obstruction to trains passing on such track.   A second section of train 37, consisting also of only an engine, with a train crew, followed the wrecking train, on orders similar to those received by plaintiff's intestate, and passed through Schenectady at 4:08.   Such engine was flagged and stopped by Wrafter, a trainman from the wrecking train, after which it continued westward on track 2 past the wrecking train without mishap.   The engine which was being run by plaintiff's intestate followed 10 minutes later, at the rate of 25 or 30 miles an hour, but collided, however, with such crane, and the plaintiff's intestate thereby received injuries, from the effects of which he died on the following day.   The plaintiff thereupon brought this action to recover for the loss thus sustained, claiming that such death occurred through the negligence of the flagman, Wrafter, in not also giving to deceased a proper signal of danger.   The jury rendered a verdict in favor of the plaintiff for $6,000, and from the judgment entered thereon, and from an order denying defendant's motion for a new trial made on the minutes, this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHES-TER, and KELLOGG, JJ.

William P. Rudd, for appellant.

Andrew J. Nellis, for respondent.

PARKER, P. J. If it be conceded that this accident happened by reason of Wrafter's negligent omission to give the danger signal to McAuley, yet the question remains, whether the defendant is responsible for that negligence. It is conceded that it would not be so responsible if Wrafter is to be considered a co-employé with McAuley; but the plaintiff claims that because Wrafter was employed upon the train that hauled the wrecking car, and which was in attendance upon such car only, and because such car with its wrecking crew was engaged only in the clearing of wrecks as they occurred upon the road, he should not be deemed a co-employé with an engineer who was engaged in hauling the defendant's freight or passenger trains. His theory, as I understand it, is that the defendant's duty requires it to furnish to all its employés a safe and unobstructed roadbed and tracks over which they are required to run. That this wrecking train is one of the means which the defendant uses in performing that duty, but inasmuch as the defendant cannot delegate that duty to any one, so as to relieve itself from responsibility for its not being done, those that are so employed must be deemed to be working in its place, must be considered while performing such work as representing it, and that therefore Wrafter, while so at work, was the alter ego of the defendant, rather than a co-employé with McAuley.

The obstruction that this wrecking train was sent out to remove, was upon track No. 4, only. It did not in any way interfere with running over track No. 2. But in the operation of removing such obstruction from No. 4, it happened that the boom of the derrick, at times, would extend over and temporarily obstruct No. 2; and it was against such temporary obstruction that McAuley should have been warned. It is conceded by plaintiff's counsel, that if a train running on track No. 1 had run off and obstructed No. 2, and the flagman on such derailed train had omitted to go out and warn McAuley, who was running west on track No. 2, against such obstruction, the defendant would not be responsible to McAuley for such neglect. Concededly such flagman would be a co-employé with McAuley. Concededly, in such case, the defendant would have filled its full measure of responsibility if it provided competent and safe trainmen, promulgated proper rules and furnished all the appliances necessary to enable the flagman to go out and give the signal of danger in such a case required. Concededly, in such case, the defendant might delegate the duty of warning McAuley, to the flagman of such train. Why should a different rule prevail in the case before us? No reason is apparent, and none is given, except the fictitious one that the company must be deemed to be itself in charge of the wrecking work, and hence must itself give notice that it is about to obstruct No. 2. I do not agree with plaintiff's counsel in this claim.

The rule that requires defendant to furnish a safe track for its employés to run over goes to this extent only, that it shall not require

them to work upon a track that it knows, or in the exercise of a reasonable inspection ought to know, is in an unsafe condition. If, when it learned that track No. 4 was obstructed and unsafe, it at once withdrew its engines from running over it, it neglected no duty it owed them, although it entirely omitted to repair the same. Unless McAuley was required to run upon track 4, he had no personal interest in having it repaired, and could make no complaint against defendant for not doing so. The defendant, therefore, in making such repairs, was not performing any special duty it owed to McAuley, or to any of its employés. It was at work in its own interest. The road cannot be operated without wrecks occurring, nor unless they are promptly cleared up when they do occur, and the wrecking train is therefore as much needed in the work of carrying on its transportation business, as are its freight and passenger trains. When the defendant sent out this wrecking train, therefore, it did so, not because it needed it to perform any duty it owed to its employés, but that it might have the benefit of track No. 4 to use in its transportation business; and the men who had charge of it bore the same relation towards defendant while engaged in such work, that they would have borne had they been operating a freight or a passenger train. In each case they would have been at work for a similar purpose, to wit, assisting defendant in the daily operation of its road. Hence the flagman on the wrecking train no more represented the master, and was no less a co-employé with McAuley, than was the flagman on the derailed train above referred to. Nor is it possible to conceive how any of the employés on such wrecking train could be performing, in the defendant's place, any such duty as the law forbids the master to delegate. They were engaged in clearing track No. 4 so it could be used, made safe if you please. But there is no rule forbidding the defendant from delegating the performance of that work to its employés. Necessarily, such work must be so performed, but that employment does not impose, nor assume to impose, upon them any authority to direct other employés when or where to work, or to require any service whatever from them. Hence they have no connection whatever with the duty that defendant is forbidden to delegate, and as to that duty, do not in any manner represent it. Clearly, for any negligent act committed by any one of such wrecking crew while so employed, the defendant is responsible only under the rule of respondeat superior. I conclude, therefore, that the plaintiff's claim that the flagman Wrafter was performing a work that the defendant could not delegate is not correct.

This case was in all its essentials similar to that of a derailment. The obstruction causing the injury was the occasional and temporary swinging of the boom onto track No. 2. An obstruction that was not known, or anticipated by the defendant when McAuley left Schenectady, and of which he could not at that time have been notified. The same precautions to notify him of such obstruction were taken by defendant as are required in the case of a derailed train, and I can discover no reason why the same rule as to defendant's responsibility should not apply to it. The question as to who are and who are not co-employés, arises in such an infinite number of instances that it is not possible to reconcile all the decisions upon that subject,

and I do not attempt to cite any case which is in all its particulars. a controlling one. I do not, however, find, and I am not cited to any that, in my judgment, is controlling against the conclusion which I have reached. On the contrary; the law upon such subject as settled in this state, is entirely in harmony therewith.

Wrafter was a co-employé with McAuley in the business of operating defendant's road, and no negligence other than his has been proved against the defendant. For such negligence, the defendant is not responsible, and therefore this action cannot be maintained.

Judgment and order affirmed upon the facts and reversed upon the law, and new trial granted, with costs to appellant to abide event. All concur.